The plaintiffs, James R. and Mary Lou Bishop, owned the property involved in this litigation and built a house on it. In June 1979, the house and lot were sold to Leon Davis, a business associate of defendant Walter D. Bullock, but Walter and his wife Brenda lived in the house. The Bishops financed the purchase and received a mortgage from Davis for monthly payments, which were not timely made. The Bishops foreclosed the Davis mortgage and bought the property at the foreclosure sale for the amount of the indebtedness. In February of 1980, the Bishops sold the property to Brenda J. Bullock.
Brenda Bullock and her husband, Walter D. Bullock, made a down payment of $6,300 and executed a purchase money mortgage to the Bishops for the balance of the purchase price, $47,700. Monthly mortgage payments of $400 were due on the sixth day of each month, with a ten-day grace period allowed for late payment.
The Bullocks made timely mortgage payments for March, April, and May, 1980. The Bullocks' check for the June payment was returned to the Bishops by the bank for *Page 25 
insufficient funds. The Bullocks contended at trial that they later gave the Bishops cash for the June payment, but they were unable to produce a receipt or any other proof of payment. The Bullocks made the July payment.
In August 1980, when the Bullocks again failed to make their payment on time, the Bishops instituted foreclosure proceedings by publishing a notice of foreclosure in the local newspaper. The Bullocks sent the Bishops a money order for the August payment on August 30, after the first foreclosure notice; the Bishops refused to accept the payment and turned over the money order to their lawyer. This money order was introduced at the trial. Subsequently, five other money orders in various amounts were sent to the Bishops, but none was accepted as payment, and none was negotiated. Each of these was introduced into evidence.
After notice of the foreclosure had been published for three consecutive weeks, a foreclosure sale was held on September 12, 1980. The Bishops again bought the property back for the amount owed on the mortgage and received a foreclosure deed.
On September 15, the Bullocks received the following letter from the Bishops' attorney:
"Dear Mr. and Mrs. Bullock:
 "Please find enclosed a money order payable to Jimmy Bishop which represented a house payment. Due to the default, this mortgage has been foreclosed . . . or [sic] was foreclosed on September 12th.
 "Under Alabama Law, you have ten days to vacate the premises and deliver possession to Mr. Bishop. Your failure to do so will result in a forfeiture of your right of redemption.
"Sincerely yours,
"Billy L. Church"
The Bullocks refused to vacate the property.
On December 3, 1980, the Bullocks were served with a second ten-day notice to vacate the property; after the Bullocks refused to vacate the premises, the Bishops filed this suit.
The Bullocks, by answer, pleaded a general denial and also counterclaimed, alleging misrepresentation and breach of warranty in the sale of the house.
On September 3, 1981, the house was destroyed by fire while the Bullocks were still in possession. The house was the subject of a separate action involving insurance proceeds. The counterclaim was severed, and the parties stipulated that the only issue to be tried in this case was title to the property.
The case was tried, and the trial court entered a final decree, vesting title in fee simple in the Bishops and divesting the Bullocks of all interest in the property. The trial court also issued a writ of possession in favor of the Bishops. Defendants' motions for new trial and JNOV were denied, and this appeal followed. We affirm.
The Bullocks first argue that the trial court erred in denying their motion for dismissal at the close of the plaintiffs' case on the ground that the notice to vacate served on December 3, 1980, was defective. Specifically, the Bullocks say that the notice, mistakenly addressed to "James R. Bullock" rather than "Walter D. Bullock," does not correspond with the parties listed in the Bishops' complaint. Therefore, the Bullocks contend this error should bar the plaintiffs from any relief under our unlawful detainer statute, § 6-6-310 (2), Code 1975. This argument is without merit. As noted, the parties stipulated, prior to trial, that the sole issue to be tried before the court was title to the property in question. Thus, the action was one of ejectment, not unlawful detainer, and a recovery in ejectment may be had after termination of the right of possession without ten days' demand in writing, Lane v.Henderson, 232 Ala. 122, 167 So. 270 (1936); Harris v. Hill,190 Ala. 589, 67 So. 284 (1914). The trial court properly denied the Bullocks' motion. Kelley v. Mashburn, 286 Ala. 7,236 So.2d 326 (1970). *Page 26 
The Bullocks next argue that the Bishops' foreclosure is void because the foreclosure sale was conducted two days prior to the expiration of the twenty-one day notice period provided in the mortgage. The clause of the mortgage upon which the Bullocks rely reads, in part: "Mortgagee shall be authorized to take possession of the premises . . . after giving twenty-one days notice by publishing once a week for three consecutive weeks, the time, place, and terms of sale. . . ." Bullock ran foreclosure notices in the "St. Clair News-Aegis" on August 24 and 31 and September 7, 1980. In each notice, September 12, 1980, was designated the date of sale. The foreclosure sale was held, as advertised, on September 12, 1980, during legal hours in front of the St. Clair County Courthouse. The Bullocks point out correctly, however, that twenty-one days following the first notice of August 24 would have been September 14, 1980, two days after the foreclosure sale was conducted. The Bullocks assert that the Bishops acted in bad faith, and that the sale is void as being contrary to the provisions of the mortgage. We disagree.
The notice required by Alabama law to foreclose a mortgage in this state is governed by § 35-10-8, Code 1975, which states:
 "Notice of said sale shall be given in the manner provided in such mortgage or deed of trust or in this Code in the county where the mortgagor resides and the land, or a part thereof, is located; but, if said mortgagor does not reside in the county where the land or any part thereof is located, then such notice must be published in the county where said land, or any material part thereof, is located; provided, that notice of all sales under powers of sale contained in mortgages and deeds of trust executed after July 1, 1936, where the amount secured is $500.00 or more, shall be given by publication once a week for three successive weeks in some newspaper published in the county in which such land or any portion thereof is situated, and said notice of sale must give the time, place and terms of said sale, together with a description of the property to be sold."
Section 6-8-62, Code 1975, provides, in part:
 "(a) When the notice is required to be given for a specified number of weeks, it must be given by consecutive weekly insertions for the number of weeks so specified. When the notice is of a proceeding to be had or of an act to be done on a specified day:
". . . .
 "(3) If for three weeks, the first insertion must be at least 18 days before such day. . . ."
Excluding the date of the first insertion, the foreclosure sale was held on the nineteenth day following and, thus, satisfies the statutory requirement by providing sufficient notice to all interested parties. We note that a twenty-one day notice provision is in keeping with the legislative intent behind § 35-10-8, by providing adequate notice prior to a foreclosure sale; however, §§ 35-10-8 and 6-8-62, read together, clearly prescribe the time which must be allowed before the sale can be held and are, thus, controlling. Johnsonv. Salter, 359 So.2d 417 (Ala.Civ.App. 1978).
We also reject the Bullocks' allegation that the Bishops' actions in foreclosing on the mortgage constituted bad faith. Notice of the sale, including the date, was properly advertised, and the sale then held according to the terms of that notice. The Bullocks did not offer any evidence that the Bishops attempted to fraudulently deceive or otherwise mislead them. To the contrary, the record shows that the Bishops attempted to work out an alternative arrangement with the Bullocks so that they could keep the house and offered to return the money orders.
Finally, the Bullocks argue that if the foreclosure sale was valid, the Bishops are now estopped from reclaiming the property because they accepted mortgage payments from the Bullocks both before and after the foreclosure sale of September 12, 1980. We disagree. Payments made by the *Page 27 
mortgagor and accepted by the mortgagee after foreclosure of the mortgage and delivery of the foreclosure deed to the mortgagee, who bid in at the foreclosure sale, are not available as a defense to an ejectment action against the mortgagor. Jones v. Butler, 286 Ala. 69, 237 So.2d 460 (1970). Here the Bishops did not accept the payments.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.