In September 1979, the Huntsville Production Credit Association (HPCA) loaned Lee Davis and Herman Scott $45,430 to purchase equipment for their new logging operation. Davis and Scott signed a real estate mortgage, a security agreement, and a note. The loan was secured by the logging equipment (sawmill, engine, loader, and skidder), a third mortgage on 355.11 acres of real estate owned by Davis, a first mortgage on a one-third interest in 15 acres owned by Scott, and two mobile homes owned by Scott. In February 1980, Davis and Scott obtained an additional advance of $22,810 from HPCA for replacement equipment. Because of the depressed economy, the equipment sat idle until the fall of 1980, when Scott began operating the mill. Scott, however, refused to make payments on the loan. When Davis discovered this, he and Scott had a serious disagreement, and Scott moved to Tennessee with all the logging equipment in his possession. No payments on the joint loan were made after April 1980.
In September 1982, HPCA filed a detinue action to repossess the logging equipment from Scott. The Circuit Court of Limestone County issued an order awarding the equipment to HPCA, which agreed to let Davis hold the equipment so that he could resell it. However, Davis was unable to find a buyer, and HPCA sent Davis notice of its intended disposition by letter of February 16, 1983:
 "I also wish to give you notice that the logging equipment, as listed herein, is to be sold on or before March 5, 1983. . . ."
HPCA sent a second notice on April 19, 1983, stating that the logging equipment was "to be sold on or before May 1, 1983." The security agreement required five days' written notice to the debtor before a private sale. HPCA took possession of the *Page 1105 
equipment on April 11 and sold the sawmill and engine for $2,000 in May and the skidder for $17,000 in July. The loader was not sold.
Meanwhile, in March 1981, HPCA made an individual loan to Davis in order to renew his current debt and to advance him $22,500 for his 1981 farming operations. The security agreement for this loan listed as collateral Davis's crops, cattle, farming equipment, and a second mortgage on 355.17 acres of real estate. Thus, HPCA held both a second and third mortgage on the land; the Farmers Home Administration (FHA) held the first mortgage. In 1982, Davis repaid approximately $17,000-$23,000 on this individual loan, but was unable to make any further payments in 1983.
On July 5, 1983, HPCA filed a detinue action against Davis and obtained a writ of seizure against the cattle and farm equipment. HPCA took possession of both on July 6 and 7, pursuant to notice on July 6:
 "Be hereby advised that it is the intent of Huntsville Production Credit Association to sell all farm equipment and cattle picked up Wednesday, July 6, 1983, from the Lee Davis farm in 5 days."
HPCA sent a second notice the next day, which provided:
 "Be hereby advised that it is the intent of Huntsville Production Credit Association to sell all farm equipment and cattle picked up Wednesday, July 6, and Thursday, July 7, 1983 from the Lee Davis farm in 5 days."
HPCA sold the cattle on July 12. On August 25, 1983, HPCA sold Davis's land at a foreclosure sale of the second mortgage and purchased it for $196,260, the same amount listed as consideration in the foreclosure deed. HPCA also purchased Scott's property at the foreclosure sale for $3,500. HPCA was still in possession of the farming equipment when trial commenced in July 1984.
There is some dispute concerning what was said at the foreclosure sale in regard to the application of the sale proceeds. HPCA and the FHA contend that HPCA announced that the first mortgage debt would be paid from the proceeds of the second mortgage foreclosure sale. Davis and several others testified that HPCA announced that the property would be sold subject to the first mortgage, and consequently, the buyer would be responsible for paying the first mortgage. That debt was $58,387.08, and was not in default at the time of the foreclosure sale. The next payment was not due until December 1983, but HPCA paid off the debt from the foreclosure sale proceeds in two payments on November 1 and 16, 1983.
In response to HPCA's detinue action filed in July, Davis counterclaimed against HPCA for conversion of the cattle and farm equipment, for money had and received (the surplus proceeds), and for fraud in the inducement. Davis's motion to dismiss HPCA's claim was denied, as were his motions for a directed verdict later during trial. The trial court instructed the jury on the detinue, conversion, and fraud claims, but not on the claim for the surplus proceeds. Davis properly objected to the court's instructions.
The jury found that HPCA was entitled to possession of the loader in the detinue action. The jury also found in favor of HPCA in regard to Davis's counterclaims. The court entered judgment for HPCA and denied Davis's subsequent JNOV and new trial motions. This appeal followed.
This case presents several closely related issues for our consideration, and we discuss each in turn.
 (1) Whether the second mortgage debt was extinguished as of the date of the foreclosure sale, which precluded HPCA from further recovery.
It is well settled in Alabama that foreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount. Mobley v.Brundidge Banking Co., 347 So.2d 1347, 1352 (Ala. 1977); Alfordv. Southern Building Loan Association, 228 Ala. 412, *Page 1106 
413, 153 So. 864, 865 (1934). Where a mortgagee purchases the premises on foreclosure for a sum equal to the sum of the mortgage note or debt and lawful expenses, the purchase operates as an extinguishment of the debt, and the mortgagee is precluded from further recovery on the debt. Whigham v.Travelodge International, Inc., 349 So.2d 1078, 1083 (Ala. 1977); Oden v. King, 216 Ala. 504, 508-09, 113 So. 609, 612
(1927).
In the present case, HPCA elected to foreclose on the second mortgage and then to purchase the property at the foreclosure sale for $196,260, an amount exceeding Davis's debt to HPCA. Therefore, HPCA received one satisfaction of the debt and was not entitled to another. Because the debt was thus extinguished, Davis was entitled to at least a directed verdict on HPCA's detinue claim.
 (2) Whether the proceeds from the foreclosure sale on the second mortgage could be applied to the first mortgage, which was not in default.
The law is clear that the proceeds from the sale of mortgaged property must be applied to the debt secured by the property.Muscle Shoals National Bank v. Hallmark, 399 So.2d 297, 298
(Ala. 1981). See, also, Pearce v. Mills, 190 Ala. 616,67 So. 581 (1941). A first mortgagee has no right to any surplus upon foreclosure of the second mortgage, particularly in the absence of default of the first mortgage. Atlas Subsidiaries ofMississippi, Inc. v. Nixon, 47 Ala. App. 103, 251 So.2d 235, 239
(1971). The foreclosure of a second mortgage is subject to the lien of the first and in no way affects its security. Atlas,supra. In the absence of an agreement in the mortgage instrument, a mortgagee may not add payments made on a senior mortgage to the sum secured by the junior mortgage. Crutchfieldv. Johnson Latimer, 243 Ala. 73, 75, 8 So.2d 412, 414 (1942).
Davis was in default only on the second mortgage. When HPCA foreclosed on this mortgage and sold the property to itself, it acquired land subject to the first mortgage. It appears from the purchase amount at the foreclosure that HPCA attempted to enforce the encumbrance of the first mortgage, which was not in default. This is impermissible, as the first mortgagee had no right to the proceeds. HPCA's announcement at the foreclosure sale that the proceeds would be applied to the first mortgage was in contravention of the law. Furthermore, there was no agreement between HPCA and Davis for HPCA to pay off the first mortgage and add the amount to the second mortgage. The trial court erred in its jury instructions on the proper application of the sale proceeds.
 (3) Whether Davis was entitled to surplus proceeds from the foreclosure sale.
The law is equally clear in regard to the issue of who gets the surplus proceeds. When property is sold at a foreclosure sale, conducted under the power of sale contained in a mortgage, at an amount greater than the indebtedness secured by the mortgage, the mortgagee is liable to the mortgagor for the surplus. Atlas, supra, 251 So.2d at 237; Bartlett v. Jenkins,213 Ala. 510, 511, 105 So. 654, 655 (1925). The result is unchanged by the fact that the purchaser at the sale is the mortgagee. Muscle Shoals Bank, supra, at 298. See, also, Pruettv. First National Bank of Anniston, 229 Ala. 441, 157 So. 846
(1934).
It is obvious in this case that Davis was entitled to the surplus proceeds from the foreclosure sale. The purchase amount exceeded the indebtedness secured by the second mortgage, even when construing the evidence most favorably to HPCA. Even the security agreement clearly stated the priority in applying the proceeds:
 "[T]he proceeds . . . shall be applied as follows: (a) to the payment and costs and charges incurred in connection with the sale including attorney's fees; (b) to the payment of any amount paid or any expense incurred by the Secured Party for taxes, levies, assessments, insurance premiums *Page 1107 
or in caring for or preserving the collateral; (c) to the payment of the indebtedness and interest secured hereby; and (d) the residue, if any, shall be paid to the Debtor."
After HPCA applied proceeds to cover its expenses and the debt, the surplus (or residue) should have been paid to Davis. The trial court erred in not directing a verdict for Davis on his claim for money had and received. The only issue left was determining the actual amount owed to Davis.
 (4) Whether the failure of HPCA's notice to designate a sale of collateral as a public or private sale rendered the notices defective, thereby constituting conversion.
In regard to the issues of conversion and notice, Alabama law defines conversion as the exercise of dominion of another over personal property to the exclusion of or in defiance of the owner's right. Wells v. Central Bank of Alabama, N.A.,347 So.2d 114, 120 (Ala.Civ.App. 1977). Failure to satisfy the notification requirements regarding the sale or disposition of collateral constitutes conversion. Simmons Machinery Co. v. M M Brokerage, Inc., 409 So.2d 743, 751 (Ala. 1981); Wells,supra, at 120. The Alabama Code states the requirements of notice:
 "[R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor."
Code 1975, § 7-9-504 (3). Furthermore, the notice must identify whether the sale is public or private, in addition to meeting the time and place requirements; the law will not put the debtor in the perilous position of interpreting a vague notice.Simmons, supra, at 750. In the absence of prior notice, the issue of conversion is clearly a question of law for the trial court. Simmons, supra.
In the present case, HPCA's notices to Davis regarding the disposition of the cattle and the farming and logging equipment were clearly deficient in that they failed to identify the type of sale. The notices merely stated a time frame for the sale. The trial court recognized the defect in the notice.
 "THE COURT: Well, there are some cases that very simply say that failure to give the proper notice is conversion and reading the notices creates at least a scintilla that they didn't meet the requirements of the law. That's where the conversion comes in. I don't know whether you have read the cases but you have got to give notice and give it a certain way. As I see it, it's not in here. It doesn't give a date of the sale, doesn't give a place of the sale and didn't give a — that type of thing."
Therefore, as a matter of law, HPCA's defective notice and subsequent sale of Davis's logging equipment and cattle constituted conversion. In addition, because Davis's second mortgage debt was extinguished as of the date of the foreclosure sale, HPCA's continued possession of Davis's other collateral — the farming equipment — was unlawful and constituted conversion. The trial court's refusal to direct a verdict on the conversion counterclaim was erroneous. The only issue proper for the jury concerned damages for conversion.
We reverse the trial court's judgment and remand for a determination of the amount that HPCA owes to Davis.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and ADAMS, JJ., concur. *Page 1108