ALMON, Justice.
These appeals arise from an action filed pro se by John Reynolds, Jr., concerning the foreclosure on a mortgage he executed in purchasing a house from Frances Weber Birnbaum, Herbert Birnbaum, Alice Bolick, and Robert Bolick. In addition to the claims he filed against the Birnbaums and the Bolicks, Reynolds filed claims against their attorney, James B. Morton, regarding his handling of the foreclosure proceedings. After lengthy proceedings, including a petition for writ of mandamus filed in and granted by this Court, Ex parte Reynolds, 447 So.2d 701 (Ala.1984), the trial court entered judgments in favor of all the defendants.
Without specifying at this stage of the opinion the claims alleged or the issues raised by Reynolds, we note generally that at various times he filed claims for redemption, breach of contract, fraud, and other alleged causes of action. We shall give a chronological statement of the facts and *1054 proceedings, after which a statement of the issues will be more comprehensible.
Reynolds bought the house, which Mrs. Birnbaum and Mrs. Bolick had inherited from their mother, on November 17, 1980. He executed a mortgage to Mrs. Birnbaum and Mrs. Bolick securing a promissory note providing for monthly payments of interest and payment of the $43,000 principal on May 15,1981. Reynolds intended to repair, refurbish, and sell the house, and he worked on it during the six-month duration of the mortgage. He did not make the April interest payment, however, and he could not pay the principal when it came due. He requested an extension of the mortgage, but the sellers refused.
Reynolds went to California on April 16, 1981, to obtain financing to avoid a fore-° closure. He stated in his deposition that he had called Morton on April 15, to tell him he was leaving for California. He recited that conversation as including the following exchange: “I asked that he notify me of any foreclosure sale advertisement, stating the date, location, and time. And he agreed to do that, said he would mail all notices of a foreclosure sale to me at 1304 42nd Street West, Birmingham.”
On April 30, 1981, Morton sent a letter on behalf of the sellers notifying Reynolds that the sellers would begin foreclosure proceedings if the balance due on the mortgage note was not paid within ten days. Reynolds’s father received the letter at the 42nd Street address, telephoned Reynolds, and read the letter to him. Reynolds telephoned Morton on May 4 to confirm that he had received the letter. At his deposition, Reynolds stated that, in that May 4 conversation, he again asked Morton to send copies of any notices of foreclosure to Morton’s Birmingham address and that Morton “reaffirmed his promise” to do so. Reynolds stated that he told Morton that he was still seeking permanent financing and that he would notify Morton of any decisions he made. His deposition continues:
“Near the end of that conversation I stated that I might have to reconvey it, but I did not discuss or propose recon-veyance.
[[Image here]]
“But I did not discuss a proposed reconveyance as an option to which I was committing myself, as Mr. Morton claims.
“At the end of that conversation Mr. Morton said to me, ‘Now you realize that if you were to reconvey, that you would automatically forfeit your redemption?’
“And my reply to that statement that forfeiture would be automatic with re-conveyance was only an acknowledgement of his premise, if in fact it was true. But I found out it was not true.
[[Image here]]
“The next day I went to the law library at USC in Los Angeles and there I found that one can convey property, subject to redemption, just as if it had been foreclosed by power of the sale in the mortgage.
“Q. Well, what was your next action in that regard?
“A. Following that discovery that I could legally convey property in lieu of foreclosure, subject to right of redemption, I wrote to the Defendant on May 9, 1981.”
The May 9 letter from Reynolds to Morton reads:
“Enclosed is a letter that I would like to have signed by Mrs. Herbert Birn-baum and Mrs. Alice Bolick before transferring title back to them. It is a statement of their agreement to file a Satisfaction of Mortgage with no further obligation on my part.
“As soon as I receive the signed agreement, I will forward the deed.”
Included with the letter was a document entitled “Agreement to File Satisfaction of Mortgage,” setting forth an agreement by the sellers to record a satisfaction of the mortgage upon receipt of a warranty deed from Reynolds. This document as included in the record contains Mrs. Birnbaum’s signature, dated May 18, 1981, and Mrs. Bol-ick’s signature, dated May 21, 1981. On May 28, Morton returned this document with the signatures to Reynolds, together with a deed prepared by Morton that included the following clause: “This deed is *1055 not a deed in lieu of foreclosure but is made in return for actual consideration and constitutes a waiver of below grantor’s one year right of redemption.” Reynolds did not sign that deed and had no further communication with Morton or the sellers through June, July, and August 1981.
On July 11, 18, and 25, 1981, the sellers published notice of a foreclosure sale to be held on August 5; on August 8, they published notice that the sale had been continued to August 14, and the sale was held on that date. Mrs. Birnbaum and Mrs. Bolick bought the property at the sale for $49,-573.89.
Morton sent the following letter, dated August 19, 1981, but postmarked August 27, to Reynolds both at the house he had bought and at his Birmingham address:
“It became necessary for us to foreclose on the mortgage in favor of Ms. Birnbaum and her sister this past Friday, August 14, 1981.
“This letter is to notify you that unless immediate possession is delivered of the premises within 10 days of receipt of this letter, you will forfeit your right of redemption to the property.”
Reynolds’s brother read the letter to him over the telephone on Saturday, August 29.
On Monday, August 31, Reynolds telephoned Morton to discuss the deadline for delivery of possession.[1] At the time, Reynolds did not know that the letter was postmarked August 27, but assumed that it had been received on August 21, two days after the date on the face of the letter. Morton allegedly told him that August 31 was the last day for delivery of possession. Reynolds told Morton that he would arrange for his brother to take the key to the house that night, unlock the door, leave the key inside, and immediately telephone the Birn-baums, who lived nearby. According to Reynolds, Morton agreed to this arrangement. Earlier on the 31st, Reynolds had telephoned an attorney who had a key to the house and asked him to deliver the key. The attorney had said that he could not deliver the key that day, but had agreed to telephone Mr. Birnbaum and tell him that the key could be picked up at the attorney’s office. According to Reynolds, when the attorney telephoned Mr. Birnbaum, he insisted that the key be delivered that day, so the attorney took it to him about noon. Reynolds stated that he learned this later from the attorney. Thus, the Birnbaums took possession of the house on the afternoon of the 31st. When Reynolds’s brother arrived that night with the key, the Birnbaums accused him of trespassing. They hired a locksmith the following day to change the lock on the door.
Some time in September, Morton moved into the house. Reynolds learned this through his brother and telephoned Morton, who said he was renting the house. Reynolds mentioned that he was considering redeeming his interest in the house, and, according to Reynolds, Morton stated that he had made some improvements, the cost of which would be included in any redemption.
Reynolds consulted with an attorney, who wrote the following letter to Morton on November 17, 1981:
“I have been retained by John M. Reynolds, Jr., to represent him in connection with his rights regarding the above foreclosure. A copy of the foreclosure deed recites a consideration several thousand dollars in excess of the debt and interest due plus any reasonable expenses.
“As you are aware, both Alabama law and the mortgage itself require that, in those cases where the property sells for more than the unpaid loan balance, interest, and reasonable expenses, the excess is to be refunded to the owner.
“I have been made aware of the fact that an attorney fee of $4,538.00 was included as one of the expenses of sale. This figure is grossly exorbitant on its face and under no stretch of the imagination could this amount be considered a reasonable attorney fee.
*1056 “In my opinion, a reasonable fee for the work performed in this matter would not exceed $250.00.
“We are hereby requesting an immediate accounting to my client of all fees and expenses incurred in the foreclosure and a refund to my client of the difference between the sales price of $49,-573.89 and the unpaid debt, interest to the date of foreclosure, and reasonable foreclosure expenses.
“In addition, we are hereby requesting a statement in writing of the debt and all lawful charges that are due in order for my client to redeem the property from the foreclosure sale.”
The attorney sent another letter on December 1, noting that, because he had not received an accounting within 10 days, the purchaser had forfeited any claim to compensation for improvements, citing Ala. Code 1975, § 6-5-234.
Morton wrote in reply on December 11, 1981:
“A demand for possession of the above premises was made on Mr. John M. Reynolds, Jr., on August 19, 1981. On the afternoon of the tenth day allowed Mr. Reynolds to deliver up possession of the property an attorney purportedly representing Mr. Reynolds delivered one key to the above premises by leaving it at the premises. That night, the Birnbaums were notified by a next door neighbor that someone was attempting to enter the dwelling, and when they arrived they found that the mother and brother of Mr. Reynolds were attempting to enter the dwelling and were going inside the dwelling place. Mr. Reynolds had designated his brother, who was going into the dwelling, as his agent and had the Birn-baums to deal with him during the time prior to the repossession and apparently had put him and his mother in possession of a key. Their key was never delivered and they attempted to go in after the purported delivery up of possession of the property and, therefore, delivery of possession was not properly carried out. It became necessary the next day for the Birnbaums, at a considerable expense, to have a locksmith come to the house at 835 Oxmoor Road and to have the locks changed.
“Therefore, Mr. Reynolds has forfeited his statutory right of redemption, is not entitled to an accounting, and is not entitled to redeem the property.”
On March 16, 1982, Reynolds filed an action against the Birnbaums and the Bol-icks. That complaint requested the court to hold the foreclosure sale invalid and void or, in the alternative, to allow Reynolds to redeem the property. The Birnbaums and Bolicks filed their answer on April 16,1982, and, along with it, a counterclaim requesting specific performance of Reynolds’s agreement to give them a deed to the property in exchange for satisfaction of the mortgage. On August 30, 1982, they filed a motion for default judgment, Reynolds not having answered the counterclaim.
On September 2, 1982, Reynolds filed a “reply” to the counterclaim and requested the court to allow the untimely reply because, he said, “as a result of the untimely withdrawal of Counter-Defendant’s attorney from this action ..., Counter-Defendant was without counsel and was not aware that this reply had to be entered within thirty days.” The attorney’s affidavit showed that he had withdrawn from the case, with Reynolds’s agreement, on March 9, 1982, because the case had expanded from a straightforward redemption action into a case requiring a type of litigation that the attorney was phasing out of his practice.
The Birnbaums and the Bolicks filed a motion for summary judgment on September 3, 1982. The court denied their motion for default judgment on September 9. On September 13, Reynolds filed a motion for summary judgment with accompanying affidavits. The court heard arguments on the motions for summary judgment and, on October 1, entered an order denying the motions and setting the case for a hearing on the merits on December 2, 1982.
On October 4, 1982, Reynolds filed an amended complaint, adding the following allegation:
*1057 “That on October 1, 1982, complainant discovered that defendants conspired fraudulently and with willful deceit to deprive complainant of his redemption rights. Complainant avers that at no time did he ever agree to waive his right to redeem nor did a conversation take place as claimed by defendants’ attorney in his affidavit of September 20, 1982.”
The amended complaint slightly modified the request for redemption and sought compensatory and punitive damages pursuant to the above-quoted allegation.
Morton’s affidavit, dated September 20, 1982, was filed with the register on October 1, 1982, and included the following regarding his conversation with Reynolds early in May 1981:
“[W]e had a conversation in which it was agreed that in return for Defendants executing a full release of the Plaintiff of any obligation under the note and mortgage, that he would execute a deed back to the Defendants, conveying all of his right, title, and interest in the property, [the] subject matter of this action, to include his one (1) year right of redemption.”
On October 19, the Birnbaums and Bol-icks filed a motion to strike the amended complaint and jury demand. The court granted the motion “to the extent that every thing pertaining to fraud or deceit is stricken from the amended Complaint filed October 4, 1982, without prejudice to Plaintiff to bring an action on the law side of this Court,” and denied the demand for jury trial. Reynolds, through an attorney representing him at the time,[2] filed a “motion for transfer of action to law side of court” on December 7,1982; the trial court denied that motion on December 14.
Reynolds petitioned for mandamus, and this Court granted the writ. Ex parte Reynolds, 447 So.2d 701 (Ala.1984). On March 14, 1984, the trial court entered an order setting the equitable issues from the original complaint for a hearing on April 24 and reserving for future consideration the legal issues posed by the amendment to the complaint.
On March 29, 1984, Reynolds filed an amended complaint, “striking everything in both original and amended complaints pertaining to equitable relief and inserting in lieu thereof the following more detailed statement of Plaintiff’s legal claims.” There followed three counts, one for fraud, one for breach of the alleged contract to notify Reynolds in advance of any foreclosure sale, and one for breach of the alleged agreement in the mortgage to refund any excess proceeds from a foreclosure sale: On April 4, 1984, the circuit judge “in equity” who had heard the case to that point entered an order transferring the case to the “law side of the court.”
In the meantime, on September 21, 1983, Reynolds had filed a complaint against Morton on the “law side of the court.” He filed amended complaints against Morton on November 8, 1983, and January 18, 1984. On April 24, 1984, Reynolds filed a motion asking that the two cases be consolidated. The court granted that motion. Reynolds filed amended complaints against Morton on September 25, October 9, October 23, and November 5, 1984.
On July 6, 1984, the Birnbaums filed an amendment to their counterclaim, alleging a claim for slander of title due to Reynolds’s filing of a lis pendens notice regarding the subject property. Reynolds filed a motion to strike the amendment to the counterclaim. The Birnbaums filed a second amendment to the counterclaim on September 19, 1984. Reynolds filed amendments to his complaint against the Birn-baums and Bolicks on September 25 and October 9, 1984, just as he did in his action against Morton. He also filed an amended complaint against the Birnbaums and Bol-icks on October 15, 1984, seeking to reinstate his claims to have the foreclosure sale invalidated' or to exercise his right of redemption. Reynolds moved for summary judgment on November 19, 1984. On December 12, 1984, the Birnbaums filed a third-party complaint against Morton.
During this time, Reynolds was submitting a series of lengthy interrogatories, the *1058 defendants were filing answers, and various objections and motions regarding discovery were filed and ruled upon. Discovery and other matters continued through 1985, and, on October 28,1985, the trial court set a trial date of May 12, 1986. Morton filed a motion for summary judgment on April 10, 1986; the trial court held a hearing on that motion on April 28, and entered an order on April 29, granting the motion as to the fraud claim against Morton on the ground that Reynolds should have discovered the alleged fraud more than one year before he filed the claim on September 21, 1988, but denying the motion as to the contract claim on the ground that there was a factual issue as to any consideration flowing to Morton.
After granting the partial summary judgment for Morton, the trial court granted a continuance from the May 12, 1986, trial setting. On May 2, 1986, Reynolds filed a motion to reconsider the summary judgment on the fraud claim; on May 9, he filed an amended complaint and an amended answer to the counterclaim. On May 16, 1986, Morton filed a motion to dismiss the May 9 amendment to the complaint. The trial court granted that motion as to the fraud claims on June 6, 1986.
On March 31,1987, Morton filed a motion for summary judgment and a brief in support thereof. Reynolds filed a motion to strike Morton’s motion for summary judgment.
The case was next set for trial for April 20, 1987. On April 3, 1987, Reynolds filed a “motion for relief from order under Rule 60,” attacking the holding in the April 29, 1986, partial summary judgment that his fraud claim was deemed to have been discovered more than one year prior to his filing suit against Morton. The motion also took issue with statements in the April 29 order to the effect that a proper foreclosure sale had been held and that Reynolds’s March 29, 1984, amendment to his complaint “had the legal effect of a dismissal or abandonment of plaintiff’s cause of action to redeem.” Also on April 3, 1987, Reynolds filed a motion for default judgment on his May 9, 1986, amended complaint.
On April 6, 1987, the defendants filed answers to the amended complaint. On April 8, Reynolds filed a motion for recusal and change of venue. On April 14, the trial judge granted the motion to recuse, noting that “all pending motions, including the motion for change of venue, shall be disposed of by the trial judge assigned to hear these consolidated cases.” The order concluded with the observation, “This case is set for trial April 20, 1987.” On April 22, another circuit judge entered the following on the case action summary sheet:
“This case being sent out for trial, and on motion of plaintiff due to this Judge’s personal acquaintance with defendant Morton, the undersigned does hereby re-cuse himself from the trial or further proceedings in this case. This case has several substantial motions pending which will require due consideration. It further appears the case should be handled by a visiting Judge. The parties agree this case should be continued for the purpose of having such Judge assigned for such pretrial and trial purposes as may be ordered. This case is therefore continued, to be reset following motion for and assignment of pretrial Judge.”
On motion of the defendants, the presiding judge appointed Judge Robert Parker, who was temporarily assigned to the circuit, to hear the case. Judge Parker held a hearing to rule on the pending motions and to enter a pretrial order and, on May 18, 1987, entered the following “Pretrial Order and Judgment”:
“These cases were assigned to the undersigned Judge on May 6, 1987, and a pretrial hearing was held on May 7,1987. The cases consist of four voluminous files which the Court was unable to read prior to the hearing. These cases have been heard by numerous Judges and several motions pending [were] heard and/or submitted to the Court for rulings. Upon reading the case files the Court should require the parties to re-plead as the unorganized verbosity of the *1059 pleadings makes them almost incomprehensible. But this would only delay this matter which needs to be completed as it has been pending for some time.
“[We omit the portions entitled ‘Factual background as perceived by this Court’ and ‘Previous Orders,’ except for the following:]
“These actions have been amended numerous times alleging, to best I can ascertain, tortious breach of contract, breach of contract, fraud, conversion of property, [and] duty of an attorney not to commence litigation by passion or interest. ... Birnbaum and Bolick have counterclaimed against Reynolds for specific performance of the agreement they signed in May, 1981, and for slander of title on June 10, 1984, as Reynolds had filed claim in lis pendens on the property.
“Motions Pending
“1. Plaintiff’s motion for default judgment against all defendants for failure to file answers for over a one year period of time.
“2. Motion for change of venue to Bessemer.
“3. Plaintiff’s motion for summary judgment on counterclaim of Birnbaum and Bolick.
“4. Motion to strike motion for summary judgment of Morton.
“5. Motion for summary judgment filed by Morton.
“6. Motion to reinstate claim of fraud against Morton.
[[Image here]]
"ORDERS
“1. That the plaintiff’s motion for default judgment ... is hereby overruled.
“2. That plaintiff’s motion for change of venue is hereby overruled.
“3. Motion of plaintiff for summary judgment on counterclaim is hereby partially granted as to Birnbaum’s and Bol-ick’s claims for specific performance of Reynolds[’s alleged May 1981 promise to convey] by warranty deed. Motion is hereby overruled as to slander of title claim.
“4. Motion to strike summary judgment [motion] of Morton is hereby overruled.
“5. Motion to reinstate claim of fraud against Morton, previously dismissed, is hereby overruled.
“6. Motion for summary judgment filed by Morton is hereby granted as there is no genuine issue of fact to be tried. The allegations of ‘bad faith,’ tor-tious interference with contract, breach of duty of attorney not to commence litigation by passion or interest are woefully short of what is required. The tort of ‘Bad Faith’ exists only against insurance companies. The tortious interference [with] a contract firstly is not supported by the pleadings or the facts and secondly is barred by the statute of limitations. The claim for breach of duty not to commence litigation by passion or interest is not supported by pleadings or fact.
“It is this Court’s opinion that when Reynolds dismissed his claims for equitable remedies this carried with it all related claims that could be litigated in that action. Therefore, Reynolds is precluded from claiming any issues except that of failure to pay over to him any sums of money due, if any at the mortgage sale, in excess of the mortgage, interest due, attorney’s fee or other legal expenses and not paid to him.
[[Image here]]
“FURTHER ORDER
“1. This case is set for hearing on June 29, 1987, at 10:00 a.m. or as soon as a jury panel is available.
“2. Issues to be tried: Reynolds’ claim for excess of money bid on the property over amount due on mortgage, interest, attorney’s fee and other legal expenses and Birnbaum’s and Bolick’s claims for slander of title.”
Other filings, including an amended complaint, appear in the record after this order, but they are not pertinent here, except that the trial court ordered that Reynolds’s fraud claims against the Birnbaums and Bolicks would be included in the issues tried. Trial was held on June 29 through *1060 July 2, 1987. At the close of Reynolds’s case, the court granted the Birnbaums’ and the Bolicks’ motion for directed verdicts on the fraud claims. The court submitted to the jury the claim for excess proceeds of the sale and the counterclaim for slander of title. In addition to verdict forms awarding damages, the court gave a form stating simply “We, the jury, find the issues in favor of the defendants,” and instructed the jury to use this form if it found that neither party was entitled to recover. The jury returned that verdict and the court entered judgment on it.
Reynolds states his issues as follows:
“1. Whether the trial court erred to reversal by a second summary judgment in favor of the defendant James Morton dismissing him, where the trial court had already preserved for trial a contract claim from his first summary judgment motion.
“2. Whether the trial court committed reversible error by granting summary judgment in favor of defendant Morton on the tort claims based on a finding that plaintiffs tort claims accrued more than one year before the complaint was filed.
“3. Whether the trial court abused its discretion and committed reversible error by determining questions of fact that should have been submitted to a jury and by incorrectly determining questions of law such that the judgment should be reversed.
“4. Whether the trial court erred to reversal by overruling plaintiff’s summary judgment motions for redemption in 1982 and 1984.
“5. Whether the trial court erred to reversal by precluding plaintiff from reinstating his equitable claims.
“6. Whether the trial court erred to reversal by refusing to allow plaintiff’s claim for redemption in view of this Court’s decision in Bullock v. Bishop, 435 So.2d 24 (Ala.1983).
“7. Whether, in the event that the foreclosure sale was valid, the trial court committed reversible error by granting a directed verdict for the defendants as to the plaintiff's fraud claim.
“8. Whether the trial court committed reversible error by overruling plaintiff’s motion for default judgment.
“9. Whether, in the event the alleged foreclosure sale was valid and if for some reason plaintiff was not entitled to redemption or damages, he was entitled by law to the excess proceeds from the alleged sale.”
In issue number 1, Reynolds first argues that the court erred in granting summary judgment on the contract count after previously having denied Morton’s motion in that respect. This contention is answered by Food Service Distributors, Inc. v. Barber, 429 So.2d 1025 (Ala.1983). Reynolds attempts to distinguish that case, first, on the ground that the Barber denial was “a routine denial ... on motion day,” and second, on the ground that Morton’s second motion for summary judgment did not raise the contract claim. We answer, first, that although the Court in Barber did base part of its reasoning on the procedure under Rule 78, A.R.Civ.P., the rationale also included the principle that “Denial of a motion for summary judgment is not a final judgment.” Barber, supra, at 1027. Furthermore, the Court also held that “The number of times a subsequent motion for summary judgment will be allowed rests within the sound discretion of the judge before whom the case is to be tried.” Id. Thus, the “routine denial” in Barber is not a distinguishing factor. Second, the record does not support Reynolds’s claim regarding Morton’s second summary judgment motion. For example, that motion includes the following statement: “Additionally, by this motion Defendant redirects the Court’s attention to those portions of the complaint which would or could possibly be construed to allege causes of action for breach of contract.”
Reynolds also argues under issue number 1 the merits of each of the claims against Morton remaining after the summary judgment on the fraud claim. We do not think any discussion is necessary on Reynolds’s attempts to raise claims he describes as bad faith, tortious interference with a contract, and duty of an attorney *1061 not to commence litigation out of passion or interest. An inspection of the record shows that the circuit court did not err in granting summary judgment on these claims.
On the contract claim, Morton aptly points out that Reynolds admitted in his deposition that no consideration was given in return for the alleged promise to notify Reynolds by mail if foreclosure proceedings were instituted. “[A] promise not supported by any consideration cannot amount to a contract or be enforced.” 17 Am.Jur.2d Contracts § 86 (1964) (citations omitted). Thus, the trial court did not err in granting summary judgment for Morton on the contract claim.
In Reynolds’s second issue, he argues that the trial court erred in holding that the statute of limitations had run on his fraud claim before he filed suit against Morton. Reynolds argues that he did not discover Morton’s alleged fraud until October 1, 1982, when Morton filed his affidavit, and that he could not have discovered the fraud earlier because Morton was concealing his interest in the house. He argues that, thus, when he filed his fraud claim against Morton on September 21, 1983, the claim was timely under the provisions of Ala. Code 1975, § 6-2-3, and the then-applicable § 6-2-39.
The statements alleged to have been fraudulently made by Morton are that (1) he said that he would notify Reynolds by mail before foreclosure proceedings were instituted; (2) he misrepresented the nature of his occupancy of the house in October 1981, after the foreclosure; and (3) he wrote to Reynolds in December 1981 that Reynolds had forfeited his right to redemption by failing to surrender the premises within ten days of his notice to quit.
As to number (3), Reynolds filed suit to redeem in March 1982, so he did not rely to his detriment on the alleged misrepresentation. As to number (2), we fail to see any allegation at all that Reynolds acted or failed to act in reliance on this alleged misrepresentation. Furthermore, the only evidence of the terms under which Morton went into possession of the house shows that he did so under a lease-sale agreement entered into on October 2, 1981; there is no evidence of any prior arrangement or intent that Morton would obtain the house. To recover for fraud, a plaintiff must show (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result. Ala. Code 1975, § 6-5-101, and cases cited thereunder, e.g., Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala.1981).
The alleged fraud numbered (1) above is the only colorable misrepresentation that would support a fraud claim. However, an allegation of a fraudulent promise to perform an act in the future must be supported by proof that the prom-isor, at the time he made the promise, did not intend to perform it. See, e.g., Russellville Production Credit Ass’n v. Frost, 484 So.2d 1084 (Ala.1986). Reynolds never submitted any evidence in opposition to the summary judgment motions tending to show that, at the time Morton allegedly said he would give notice by mail of any foreclosure, he intended not to do so. Morton did send notice on April 30, 1981, that foreclosure proceedings would be instituted if the amount due on the note was not paid within ten days, and Reynolds thereafter mailed to Morton a proposal for a deed in lieu of foreclosure. Reynolds never responded after the deed with a waiver of the right of redemption was sent to him. Reynolds characterizes these facts as showing a contract by which the Birn-baums and the Bolicks, through Morton as their attorney, agreed to accept a deed in lieu of foreclosure. Viewed in light of the absence of any consideration for any such agreement, it becomes clear that these exchanges were simply negotiations that broke down when Reynolds did not respond. Far from showing that Morton never intended to notify Reynolds of foreclosure proceedings, these facts show that Morton would have been justified thereafter in assuming that any such agreement to notify had been satisfied.
Moreover, Morton’s affidavit filed on October 1, 1982, does not contain any *1062 information that can reasonably be said to have notified Reynolds of facts regarding the alleged fraud that would have enabled him, for the first time, to discover the alleged fraud. The portion of that affidavit quoted above seems to be the portion that Reynolds relies on, and it simply shows that Morton took the position that Reynolds had agreed to waive his right of redemption. That was obviously Morton’s position when he mailed a deed with waiver of redemption to Reynolds in 1981. Therefore, the trial court did not err in holding that the fraud claims were barred by the statute of limitations.
Issue number 8 takes issue with the manner in which Judge Parker scheduled the hearing only one day after being assigned the case and, after that hearing, made rulings on the merits. The claim of inadequate notice is insubstantial, given the length of time these matters had been pending. Reynolds bases his argument that Judge Parker should not have ruled on the merits on his characterization of the hearing as a pretrial conference under Rule 16, A.R.Civ.P. Judge Parker made it clear at the beginning of the hearing that he was taking the pending motions under advisement: “We are going to set [sic] a pretrial conference, and we are going to hear all the motions that we can get rid of today.” The order issued after the hearing, and quoted in part above, shows that Judge Parker considered the pertinent materials in ruling on the summary judgment motions, and the transcript of the hearing shows that he gave Reynolds ample opportunity to present his position. Therefore, issue number 3 presents no ground for reversal.
Reynolds’s argument under issue number 4 depends again on his characterization of the “agreement to file satisfaction of mortgage” signed by Mrs. Birnbaum and Mrs. Bolick in May 1981 as a contract to accept a deed in lieu of foreclosure that they breached by sending the agreement to him with a deed waiving right of redemption. Reynolds argues from this premise and from his assertion that the foreclosure deed was void that the trial court erred in not granting his motions for summary judgment on his claim for redemption. We see no error here.
Issue number 5 relates to Reynolds’s attempt to amend his complaint to reinstate his claim for redemption and his claim that the foreclosure sale was void. Reynolds had previously dismissed these claims when he was resisting the court’s decision to hear the equitable claims first and the legal claims later. The allowance of amendments to a complaint at such late stages of a proceeding is discretionary with the trial court. Rule 15(a), A.R.Civ.P. The court did not abuse its discretion in disallowing Reynolds’s attempt to shift the theory under which he was attempting to proceed.
Under issue 6, Reynolds argues that, because the Court in Bullock v. Bishop, 435 So.2d 24 (Ala.1983), turned to Ala. Code 1975, § 6-8-62, in construing the time period for notice under § 35-10-8, the Court should similarly read § 6-8-66 as requiring a foreclosing mortgagee to mail to the mortgagor a copy of the newspaper in which notice is published. We pretermit discussion of this issue, because we hold that the trial court did not err in disallowing Reynolds’s attempt to reinstate his claim to have the foreclosure sale voided.
Issue number 7 concerns the allegations of fraud by the Birnbaums and the Bolicks concerning the surrender of possession of the premises on August 31, 1981. Because Reynolds filed a claim for redemption in March 1982, which, if prosecuted to conclusion, would have resolved the question of whether there was an effective delivery of possession, and because he voluntarily dismissed this claim, he cannot have suffered any damage by any alleged fraudulent representations by the Birnbaums and the Bolicks in this context.
Issue number 8 concerns a motion for default judgment against the Bolicks for their failure to appear at trial. Counsel for the Birnbaums stated that he had a power of attorney from the Bolicks and was representing their interest. Although the power of attorney was not produced, Reynolds did not insist on its production, *1063 and, under the circumstances of this case, no error can be predicated on the court’s refusal to grant a default judgment against the Bolicks.
Issue number 9 is easily answered: the claim for excess proceeds was submitted to the jury, which returned a verdict for the defendants. Reynolds’s only argument in support of this issue is that he “yvas entitled to receive the excess proceeds by the authority of Davis v. Huntsville Production Credit Ass’n, 481 So.2d 1103 (Ala.1985) and cases there cited.” The Court’s statement in Davis that “The trial court erred in not directing a verdict for Davis on his claim for [the surplus proceeds],” id., at 1107, must be taken in light of the holdings therein regarding foreclosure by a second mortgagee when the first mortgage is not in default, and simply means that Davis was entitled to surplus proceeds, if any. Indeed, the Court went on to say, “The only issue left was determining the actual amount owed to Davis.” Id. Here, the allegations that the costs included in the foreclosure sale were unreasonable presented a fact question that the jury decided against Reynolds.
In conclusion, we hold that Reynolds has not produced any evidence of any actionable conduct by any of the defendants as to which the trial court committed reversible error in any of its rulings. He voluntarily dismissed his claim for redemption, and the trial court did not err in disallowing his motion to reinstate that claim at a later stage in the proceedings. His claim for excess proceeds of the sale was tried to the jury, which returned a verdict against him. The judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.

. Under Ala. Code 1975, § 6-5-233, the mortgagor must deliver possession of the premises within 10 days of the foreclosure purchaser’s demand therefor; if the mortgagor fails so to deliver possession, he forfeits his right of redemption.

. The court granted that attorney’s motion to withdraw on September 9, 1983.