The plaintiff, Cleopatra Abston, appeals from a summary judgment entered against her in the Circuit Court of Mobile County. We affirm.
Robert Rodgers purchased a 1979 automobile from Treadwell Ford, Inc., on June 30, 1979. Rodgers, as purchaser, and Abston, as co-maker, executed an installment sales contract and security agreement to Central Bank of the South (hereinafter "Central") and Central financed the purchase price of the automobile.
The contract executed by Abston and Rodgers provided:
 [The "buyer" will maintain] "physical damage insurance at all times with respect to the collateral against risks of collision, theft and such other risks to which such collateral may be exposed as seller may require. . . ." If prior to payment in full, dual interest insurance is cancelled, then after buyer has been notified of cancellation of such coverage and has been afforded at least ten (10) days to procure a dual interest policy seller may purchase a Holder's Interest Only Insurance Policy, and buyer shall pay the premium therefor to seller on demand (or if seller permits, in equal installments concurrently with the installments of the unpaid balance then remaining payable hereunder).
Abston and Rodgers resided together at the time they purchased the automobile. Rodgers initially maintained the required insurance coverage on the automobile, but the insurance coverage lapsed in October 1979, because of nonpayment of the premium. *Page 1299 
Prior to the lapse of the policy of insurance, Abston and Rodgers parted company. Abston kept the car and continued making payments on the automobile. Rodgers continued to live in the same trailer park as Abston, but in a different trailer.
In 1980, Central became aware that the insurance coverage on the automobile had lapsed and sent two notices to Abston and Rodgers informing them of the lapse in insurance and informing them that Central would purchase a "holder's interest only" insurance policy to cover its interest in the automobile if it did not receive a renewal "dual interest policy" within ten days, and would add the cost of the policy to the outstanding loan balance. The two notices were addressed to "Rodgers, Robert" and "Rodgers, Cleopatria A.," and were mailed to "Ramsey 1, Rt. 3 Box 19," which Abston admits was her correct address at the time the notices were mailed. However, Abston stated in deposition, "I don't remember getting any kind of notification of insurance being added to it."
Central did not receive a renewal policy from Abston or Rodgers and procured a holder's interest insurance policy on the automobile on November 3, 1980, for coverage extending to July 10, 1983. Premium and interest charges for the insurance policy, totaling $1,035.69, were added to the outstanding balance owed on the contract. The holder's interest policy insured Central's interest in the automobile against fire, lightning, transportation, theft, collision or upset, repossession expenses, and mechanic's liens. The policy also provided "supplemental coverage."
A certificate of insurance and letter dated December 10, 1980, was mailed to "Ramsey 1, Rt. 3, Box 19." The letter explained that the cost of the insurance policy had been added to the unpaid loan balance and would be due and payable on the date of the last installment payment unless other arrangements were made by the debtor. Abston stated in deposition that she did not remember receiving the letter and did not remember if she was living at Ramsey 1, Rt. 3, Box 19, on December 10, 1980.
Abston made the remaining scheduled payments under the contract, which left the amount claimed by Central for the purchase of insurance outstanding on the date the last scheduled payment was made. On December 2, 1983, Central delivered a letter to Abston's residence demanding that Abston pay the outstanding balance of $1,211.13, which included the cost of the insurance and accrued late charges. Abston contacted Central to explain that she was unable currently to pay the entire outstanding balance. Central subsequently repossessed the automobile and sold it at a private sale for $1,100.00. It is undisputed that Central, by certified mail, gave Abston advance notice of the private sale. Following the sale, Central notified Abston that a deficiency of $493.83 remained, but Central has not initiated a legal action to recover this amount from Abston.
Abston filed suit against Central in May 1984, alleging conversion and wrongful repossession of the automobile. As we understand Abston's allegations, she contends that her duty to pay the outstanding balance on the contract demanded by Central was extinguished because (1) Central's notice to Abston of the lapse of insurance coverage and the subsequent purchase of a holder's interest insurance policy was inadequate because it was addressed to "Rodgers, Cleopatria A.," rather than to "Cleopatra Abston"; (2) the single interest insurance policy purchased by Central covering repossession expenses and mechanic's liens and providing supplemental coverage was excessive coverage not permitted by the terms of the contract; and (3) the amount demanded by Central from Abston was excessive because it included the cost of the impermissible insurance coverage, contested late charges, and unreasonable repossession expenses. Abston argues that one, or all, of these factors would have extinguished her obligation to pay the outstanding balance, and, therefore, that Central's subsequent repossession and sale of the automobile to partially satisfy the outstanding *Page 1300 
indebtedness was wrongful and constituted conversion.
Central moved for summary judgment, and it was granted by the trial court. Abston appeals. We affirm.
Abston contends that there were genuine issues of material fact that precluded summary judgment. Specifically, she contends that she presented a scintilla of evidence to support her allegations that Central gave her insufficient notice regarding its procurement of insurance on the automobile and that Central procured insurance not authorized by the terms of the installment contract. On the other hand, Central argues that Abston has totally failed to present evidence that creates a genuine issue of material fact and that it is entitled to judgment as a matter of law.
Although we agree with Central that the trial court correctly granted summary judgment, it is not necessary to reach the merits of Abston's contentions regarding the sufficiency of notice and the excessive insurance coverage issues. Regardless of our resolution of these issues, Abston has failed to present a factual basis upon which to predicate her allegations of conversion and wrongful repossession. The linchpin of Abston's conversion and wrongful repossession claims is that she was discharged of her obligation to pay the remaining balance demanded by Central. However, neither the contract terms, nor the authority cited by Abston, supports her contention that her payment of the outstanding balance was discharged, even if her allegations regarding notice and excessive coverage are assumed to be correct.
Under certain circumstances, a debtor may be discharged from paying amounts owed on a note in a consumer transaction. For example, Code 1975, § 5-19-19, provides that a creditor that makes an excess finance charge in "deliberate violation of or in reckless disregard" of the consumer finance provisions forfeits its rights to collect the principal debt or any finance charge thereon. In addition, a debtor may be entitled to a reduction in the amount of a deficiency remaining after the sale of collateral as damages for a creditor's commercially unreasonable behavior in the sale of repossessed collateral.Valley Mining Corp., Inc. v. Metro Bank, 383 So.2d 158 (Ala. 1980). Failure of the creditor to give the debtor notice of the proposed sale of repossessed collateral, as required by Code 1975, § 7-9-504 (3), is one example of commercially unreasonable behavior that may give rise to a reduction in the amount of a deficiency. Id. Moreover, the sale of repossessed collateral by a creditor without the creditor's having given the debtor the notice required by Code 1975, § 7-9-504 (3), is a conversion for which damages may be recovered by the debtor.Davis v. Huntsville Production Credit Ass'n, 481 So.2d 1103
(Ala. 1985); Simmons Mach. Co. v. M M Brokerage, Inc.,409 So.2d 743 (Ala. 1981); Wells v. Central Bank of Alabama, N.A.,347 So.2d 114 (Ala.Civ.App. 1977).
However, the facts of the instant case do not support the application of any of these theories. It is undisputed that Abston received the required notice of the sale of the automobile, as required by Code 1975, § 7-9-504 (3). Central has not sued Abston for the amount of the alleged deficiency, and Abston has not provided a single shred of evidence to support an allegation that the repossession and sale of the automobile were in some way commercially unreasonable. Moreover, Abston has failed to direct us to any sound authority in support of her contention that the allegedly insufficient notification of the lapse of insurance or the purchase of excessive holder's insurance coverage would relieve her of her obligation to pay the outstanding balance of the contract. Although such contentions, if supported by credible evidence, might support an action for breach of contract — a claim not advanced by Abston — they do not support an action for conversion and wrongful repossession.
Since Abston has failed to provide evidence in support of any viable theory for relieving her from paying the outstanding balance of the contract, and has failed to show that the repossession and sale of the automobile were in any way commercially *Page 1301 
unreasonable, there is no basis for her claim that Central's repossession was wrongful and constituted a conversion.
Therefore, the trial court was correct in granting summary judgment in favor of Central on Abston's conversion and wrongful repossession claims, and its judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.